UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FANNIE MAE,

                            Plaintiff,

        v.

QUICKWAY ESTATES LLC, *et al*,

                            Defendants.

No. 22-CV-3048 (KMK)

OPINION & ORDER

Mark A. Slama, Esq.
Windels Marx Lane & Mittendorf
New Brunswick, NJ
*Counsel for Plaintiff*

Jeremy Rosenberg, Esq.
The Law Offices of Jeremy Rosenberg
White Plains, NY
*Counsel for Defendants Quickway Estates LLC and Jacob Grunhut*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Fannie Mae ("Fannie Mae" or "Plaintiff") brings this commercial mortgage

foreclosure Action against Quickway Estates LLC ("Quickway"), Jacob Grunhut ("Grunhut";

collectively with Quickway, "Defendants"), the New York State Department of Taxation and

Finance ("DOTF"), John and Jane Does 1-10, ABC LLC 1-10, and XYZ Corp. 1-10, involving

real property located at 5 Quickway Road, Monroe, New York (the "Mortgaged Property"). (*See*

*generally* Compl. (Dkt. No. 1).)[1]  Defendants bring a counterclaim against Plaintiff alleging that

Plaintiff improperly filed a notice of pendency against the Mortgaged Property. (*See* Answer ¶

124 (Dkt. No. 22).)

---

[1] At this time, Defendants DOTF, the John and Jane Does 1-10, ABC LLC 1-10, and
XYZ Corp. 1-10 have not yet appeared in this case. (*See generally* Dkt.)

Before the Court are three Motions: (1) Plaintiff's Motion for Summary Judgment against Quickway and Grunhunt, (Not. of Mot. ("Pl's Not. of Mot.") (Dkt. No. 36)), (2) Plaintiff's Motion for Default Judgment against DOTF, (*see id.*), and (3) Defendants' Cross-Motion for Summary Judgment, (*see* Not. of Mot. ("Defs' Not. of Mot.") (Dkt. No. 37)).  For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted, Plaintiff's Motion for Default Judgment is denied without prejudice, and Defendants' Motion for Summary Judgment is denied.

## I.  Background

### A.  Factual Background

The following facts are taken from the Parties' statements pursuant to Local Civil Rule 56.1, specifically Plaintiff's 56.1 Statement, (Pl's Rule 56.1 Statement ("Pl's 56.1") (Dkt. No. 36-23)), Defendants' Counter 56.1 Statement, (Defs' Rule 56.1 Statement ("Defs' Counter 56.1") (Dkt. No. 37-9)), Defendants' Response to Plaintiff's 56.1 Statement, (Def's Counterstatement to Pl's Rule 56.1) ("Defs' Resp. 56.1") (Dkt. No. 37-11)), and Plaintiff's Response to Defendants' Counter 56.1 Statement, (Pl's Resp. to Defs' 56.1 Statement ("Pl's Resp. 56.1") (Dkt. No. 38-1)), and the admissible evidence submitted by the Parties.  The facts

are recounted "in the light most favorable to" the non-movant.  *Wandering Dago, Inc. v. Destito*,

879 F.3d 20, 30 (2d Cir. 2018) (quotation marks and citation omitted).[2, 3]

---

[2] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Civ. R. 56.1(b).  The court may not grant summary judgment based on a fact in a Rule 56.1 statement—even if undisputed—not supported by admissible evidence.  *E.g.*, *Giannullo v. City of N.Y.*, 322 F.3d 139, 142–43 (2d Cir. 2003) (vacating grant of summary judgment to defendants based on facts enumerated in Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence).  Nor may a court accept a conclusory denial in a Rule 56.1 counterstatement if the denial is not supported by admissible evidence.  *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 354–55 (E.D.N.Y. 2015) (granting summary judgment where nonmoving party "relie[d] solely on his own general statements" rather than admissible evidence in disputing moving party's statement of material facts).

Here, Defendants have purportedly filed a counterstatement of facts with two general types of responses: (1) stating that Defendants cannot "admit or deny [P]laintiff's statements," (*see, e.g.*, Defs' Resp. 56.1 ¶¶ 1–3), and (2) providing blanket denials of Plaintiff's statements, citing Defendants' Answer to the Complaint as admissible evidence, (*see, e.g.*, *id.* ¶¶ 21–25).  As to the first type of responses, as Defendants have failed to "specifically controvert[]" Plaintiff's material facts, these facts "will be deemed to be admitted for purposes of the motion[.]"  Local Civ. Rule 56.1(c); *see also Lazare v. City of N.Y.*, No. 19-CV-2274, 2021 WL 6051625, at *1 (E.D.N.Y. Dec. 21, 2021) (deeming facts admitted where a plaintiff "merely noted he cannot admit or deny" the facts); *Whitehurst v. 230 Fifth, Inc.*, 998 F. Supp. 2d 233, 248 (S.D.N.Y. 2014) ("In some cases Plaintiffs refuse to admit or deny a particular statement, submitting only that they 'lack knowledge or information sufficient to form a belief as to' the statement in question.  This is not a permissible basis on which to rebut a fact submitted as undisputed by a moving party." (citation omitted)).

As to the general denials, while Defendants cited admissible evidence in the form of their Answer to the Complaint, the Answer itself is a collection of blanket denials without additional admissible evidence.  (*See* Answer.)  As such, Defendants have again failed to "specifically controvert[]" Plaintiff's material facts.  *See* Local Civ. Rule 56.1(c); *Kelly v. City of N.Y.*, 576 Fed. App'x. 22, 24 n.2 (2d Cir. 2014) (summary order) (finding no error in the district court "deem[ing the] plaintiffs' Local Civil Rule 56.1 Statement admitted where [the] defendants' Rule 56.1 responses were general denials and admissions that did not meet the substance of [the] plaintiffs['] allegations"); *Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300, 313 (S.D.N.Y. 2009) ("Paragraphs in [the plaintiff's] Rule 56.1 Statement that are not 'specifically controverted by a correspondingly numbered paragraph' in the [defendants'] Rule 56.1 Counterstatement are deemed admitted for purposes of [the plaintiff's] summary judgment motion." (emphasis omitted) (citing Local Civ. Rule 56.1(c))).

1.  The Parties

Plaintiff is a "federally chartered corporation" based in Washington D.C., which owns any and all right, title, and interest in the mortgage and related commercial debt instruments and loan documents.  (Pl's 56.1 ¶¶ 1–2; Compl. Ex. A ("Am. Note"), at 7 (Dkt. No. 1-1) (stating that the mortgage should be "pa[id] to the order of Fannie Mae without recourse"); Compl. Ex. F ("Mort. Assignment"), at 3 (Dkt. No. 1-7) (assigning the mortgages as consolidated to Fannie Mae); Compl. Ex. G ("Collateral Assignment"), at 2 (Dkt. No. 1-8) (assigning collateral agreements and other loan documents to Fannie Mae).)[4]  Plaintiff is the "successor-by-assignment" to all relevant loan documents at issue in the instant Action, receiving the documents from the original lender, Greystone Servicing Company LLC ("Greystone").  (Pl's 56.1 ¶ 3; *see also* Mort. Assignment at 3; Collateral Assignment at 2.)

Quickway is a New York limited liability company which is listed in the loan documents as the "Borrower" and "owner in fee simple absolute" of the Mortgaged Property.  (Pl's 56.1 ¶¶

---

The Court will—as it must—scrutinize Plaintiff's submitted evidence to determine whether the evidence supports Plaintiff's statements.  However, if the evidence is valid, the Court will deem the fact admitted for the purposes of these Motions given Defendants' failure to comply with Rule 56.1.

[3] Defendants' single statement of undisputed facts, (*see* Defs' Counter 56.1), is "rife with legal argument improper in a Rule 56.1 Statement."  *Cunningham v. Cornell Univ.*, No. 16-CV-6525, 2019 WL 4735876, at *1 n.3 (S.D.N.Y. Sept. 27, 2019).  It is black-letter law in the Second Circuit that such submissions "*are not argument*.  They should contain factual assertions with citation to the record.  They should not contain conclusions."  *U.S. Info. Sys., Inc. v. Int'l Brotherhood of Elec. Workers Loc. Union No. 3*, No. 00-CV-4763, 2006 WL 2136249, at *3 (S.D.N.Y. Aug. 1, 2006) (emphasis in original) (quotation marks omitted), *aff'd*, 56 F. App'x 27 (2d Cir. 2003) (summary order)); *see also W.S.R. by and through Richardson v. FCA US, LLC*, No. 18-CV-6961, 2022 WL 4648403, at *8 n.11 (S.D.N.Y. Sept. 30, 2022) (same).  Given that the entire statement is reiterating Defendants' legal argument in opposition to Plaintiff's motion, the Court will not consider Defendants' submission.

[4] For all Mortgage related documents, given the inconsistent numbering throughout, the Court cites to the ECF stamped page numbers.

4–5; Def's Resp. 56.1 ¶¶ 4–5.)[5]  Grunhut is a New York resident, who is the Guarantor on the loan documents as well as the managing and sole member of Quickway.  (Pl's 56.1 ¶¶ 6–7; Defs' Resp. 56.1 ¶ 6; Compl. Ex. D-2 ("Security Agreement 2"), at 55 (Dkt. No. 1-5) (identifying Grunhut as the "key principal" and "guarantor"); *id*. at 28 (identifying Quickway as the "borrower" and listing Grunhut as "managing and sole member" of Quickway).)[6]

Finally, DOTF is a governmental entity of the State of New York, located in Albany, N.Y.  (Pl's 56.1 ¶ 8.)[7]

## 2.  The Loan Documents

Quickway and Grunhut executed five documents on December 9, 2019, which, in combination with all other related debt instruments not discussed herein, are together known as the "loan documents."  (Pl's 56.1 ¶ 23 n.1.)  First, Quickway executed and delivered an Amended and Restated Multifamily Note (the "Amended Note") to Greystone, which consolidated prior notes executed in 2017 and 2019 into a single debt with an outstanding principal amount of $1,800,000.00.  (Pl's 56.1 ¶¶ 9–11; *see also* Am. Note.)  Next, Quickway executed a second document titled the Gap Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (collectively, the "Gap Mortgage"), which provided security for the principal owed to Greystone and encumbered the Mortgaged Property. (Pl's 56.1 ¶¶ 12–13; *see also* Compl. Ex. B ("Gap Mortgage") (Dkt. No. 1-2).)

---

[5] Defendants do not "admit[] to the designation 'Borrower,'" (*see* Defs' Resp. 56.1 ¶ 4), however the underlying loan documents describe Quickway as such, (*see* Compl. Ex. D-1 ("Security Agreement 1"), at 9 (Dkt. No. 1-4)).  As such, the Court deems this fact admitted.

[6] Defendants do not "admit[] to the designation 'Guarantor,'" (*see* Defs' Resp. 56.1 ¶ 6), however the underlying loan documents describe Grunhut as such, (*see* Security Agreement 2 at 55).  As such, the Court deems this fact admitted.

[7] Defendants deny sufficient knowledge to admit or deny this fact.  (*See* Defs' Resp. 56.1 ¶ 8.)

Subsequently, Quickway also executed and delivered a Consolidation, Extension, and Modification Agreement ("CEMA") to Greystone, which provided security for payment of the money owed under the notes, as well as consolidated prior mortgages and liens executed in 2017 with the Gap Mortgage into a single lien on the Mortgaged Property in the amount of $1,800,000.00.  (Pl's 56.1 ¶¶ 15–18; Compl. Ex. C ("CEMA") (Dkt. No. 1-3).)  The Gap Mortgage and the CEMA were recorded with the Orange County Clerk on December 27, 2019. (Pl's 56.1 ¶¶ 15, 19; Gap Mortgage at 2; CEMA at 2.)[8]

Quickway executed and delivered a fourth document to Greystone titled the Multifamily Loan and Security Agreement (the "Security Agreement").  (Pl's 56.1 ¶¶ 20–21; *see also* Security Agreement 1; Security Agreement 2.)  Finally, Grunhut executed and delivered to Greystone a Guaranty of Non-Recourse Obligations (the "Guaranty"), pursuant to which Grunhut guaranteed the full and prompt payment of the loan obligations.  (Pl's 56.1 ¶¶ 22–23; Compl. Ex. E ("Guaranty") (Dkt. No. 1-6).)

Finally, on December 9, 2019, the loan documents were assigned and endorsed by Greystone to Fannie Mae in three ways: (1) "pursuant to an endorsement on the face of the Amended Note," (Pl's 56.1 ¶¶ 26–28; Am. Note at 7); (2) by written assignments pursuant to an Assignment of Mortgages as Consolidated ("Consolidated Assignment") and the Assignment of Collateral Agreements and Other Loan Documents (the "Collateral Assignment"), (Pl's 56.1 ¶¶ 26, 29–30; *see also* Mort. Assignment; Collateral Assignment); and (3) by physical delivery to Fannie Mae, (Pl's 56.1 ¶¶ 26, 31).[9]  According to Plaintiff, "[s]ince the assignment and delivery

---

[8] Defendants deny sufficient knowledge to admit or deny these facts.  (Defs' Resp. 56.1 ¶ 19.)

[9] Defendants deny sufficient knowledge to admit or deny any facts listed in this section. (*See* Defs' Resp. 56.1 ¶¶ 26–32.)

of the Loan Documents to Plaintiff on December 9, 2019, Plaintiff has been and remains in possession of the original Notes as well as the other Loan Documents and has not transferred or assigned the same."  (Pl's 56.1 ¶ 32.)

### 3.  Defendants' Alleged Default

On December 9, 2019, Greystone advanced the $1,800,000 loan to Quickway.  (Pl's 56.1 ¶¶ 24–25; *see also* Decl. of Matt Trent ("Trent Decl.") ¶ 20 (Dkt. No. 36-22).)  Pursuant to the terms of the loan documents, Quickway agreed to repay the loan and corresponding interest in monthly installments starting on February 1, 2020, as well as related fees, taxes, and other premiums as outlined throughout the documents.  (*See* Pl's 56.1 ¶¶ 33–36; Am. Note at 2 (discussing the repayment schedule); Security Agreement 2 at 58–60 (describing the "mortgage loan information," including specific repayment dates and interest percentages).)  If Quickway did not pay its loan installment payment within ten days of the due date, Quickway agreed to pay a 5% late charge on the overdue payments.  (Pl's 56.1 ¶ 38; Security Agreement 1 at 11.)  The loan documents further provide that, if Quickway failed to pay any amount required by the loan documents, this constitutes an "Event of Default."  (Pl's 56.1 ¶ 39; Security Agreement 2 at 14–16.)  As per the loan documents, in the event of a default, Quickway will be subject to interest at a "default rate," (Pl's 56.1 ¶ 37; Security Agreement 1 at 12 (discussing the default rate)), the entire unpaid principal balance of the loan and any associated interest becomes immediately payable, (Pl's 56.1 ¶ 40; Am. Note at 2–3), and Plaintiff may initiate foreclosure proceedings, (Pl's 56.1 ¶ 41; Gap Mortgage at 14–16)  Quickway also agreed that it shall pay all costs and expenses incurred by Plaintiff in enforcing the loan documents, such as reasonable attorneys' fees, disbursements, and expenses, collecting interest at the default rate until it is paid in full. (Pl's 56.1 ¶ 42; Gap Mortgage at 15–16.)

Plaintiff argues that Quickway failed to make its monthly payments starting on August 1, 2020, and continuing thereafter, resulting in putting both Quickway and Grunhut as guarantor of the loan documents in default.  (Pl's Resp. 56.1 ¶¶ 45–46.)  Plaintiff issued a Notice of Default, Acceleration, and Demand for Payment (the "Default Letter") on December 3, 2020.  (*Id*. ¶ 47; Compl. Ex. H ("Default Ltr.") (Dkt. No. 1-9).)  Neither Quickway nor Grunhut has cured its defaults, and, as of February 1, 2023, Plaintiff is owed $2,423,493.10 under the loan documents as well as contract and default interest.  (Pl's 56.1 ¶¶ 48–50.)

B.  Procedural History

Plaintiff filed its initial Complaint on or about April 13, 2022.  (*See* Compl.)  On the same day, Plaintiff filed an ex parte application to appoint a receiver pursuant to Federal Rule of Civil Procedure 66 to take control of the Mortgaged Property.  (*See* Dkt. No. 6.)  On May 3, 2022, Plaintiff filed an updated proposed order appointing the requested receiver.  (Dkt. No. 13.)  The Court granted Plaintiff's application on May 4, 2022.  (*See* Order (Dkt. No. 16).)  On May 12, 2022, Defendants' counsel filed a stipulation by which Plaintiff and Defendants jointly agreed to extend Defendants' time to file an Answer, which the Court granted on May 13, 2022. (*See* Dkt. Nos. 17–18.)  On June 24, 2022, Defendants filed an answer to the Complaint and a counterclaim against Plaintiff.  (Answer.)  Plaintiff answered Defendants' counterclaim on July 13, 2022.  (Dkt. No. 25.)

After completing discovery, Plaintiff filed a pre-motion letter in anticipation of filing motions for summary judgment, default judgment, and other related relief on January 20, 2023. (Dkt. No. 33.)  After receiving Defendants' response, (Dkt. No. 34), the Court adopted a briefing schedule in lieu of holding a pre-motion conference, (Dkt. No. 35).  On February 24, 2023, Plaintiff filed its instant Motions.  (*See* Pl's Not. of Mot.; Pl's 56.1; Mem. of Law in Supp. of Mot. ("Pl's Mem.") (Dkt. No. 36-24); Decl. of Mark A. Slama ("Slama Decl.") (Dkt. No. 36-1);

8

Decl. of Joel Shaddox ("Shaddox Decl.") (Dkt. No. 36-21); Trent Decl.)  Defendants filed their

Opposition and Cross-Motion on May 24, 2023.  (*See* Defs' Not. of Mot.; Mem. of Law ("Defs'

Mem.") (Dkt. No. 37-10); Defs' Counter 56.1; Defs' Resp. 56.1; Decl. of Jacob Grunhut

("Grunhut Decl.") (Dkt. No. 37-1); Decl. of Jeremy Rosenberg ("Rosenberg Decl.") (Dkt. No.

37-5).)  On April 7, 2023, Plaintiff filed its Reply.  (*See* Reply Mem. in Supp. of Mot. ("Pl's

Reply") (Dkt. No. 38); Pl's Resp. 56.1; Decl. of Joel Shaddox (Dkt. No. 38-2).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.

2014) (same).  "In deciding whether to award summary judgment, the [C]ourt must construe the

record evidence in the light most favorable to the non-moving party and draw all reasonable

inferences in its favor."  *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 355 (2d Cir. 2021); *see also*

*Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "It is the movant's burden to

show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373

F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*,

No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it

ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an

essential element of the non[-]movant's claim," in which case "the non[-]moving party must

come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order

to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d

114, 123 (2d Cir. 2013) (alteration and quotation marks omitted).  Further, "[t]o survive a

[summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Insurance Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading.").  And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law."  *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted).  At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  *Brod v. Omya*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted).  Thus, a court's goal should be "to isolate and dispose of factually unsupported claims."  *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial.  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,

164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity*, 51 F. Supp. 3d at 419 (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (quotation marks omitted)).

### B.  Motion for Summary Judgment Analysis

Plaintiff raises several arguments in its memoranda, contending that: (1) it is entitled to summary judgment on foreclosure of the Mortgaged Property, (*see* Pl's Mem. 2–4); (2) Defendants' affirmative defenses and counterclaim must be dismissed, (*see id.* at 5–23); and (3) Plaintiff is entitled to the amount due under the loan documents as well as attorneys' fees (*see id*. at 23–24).  Defendants argue in their cross-motion that (1) this Court lacks jurisdiction over the instant action because Greystone allegedly "surreptitiously attempt[ed] to manufacture diversity jurisdiction by effectuating an assignment of the loan documents to Fannie Mae," (Defs' Mem. 4; *see also id*. at 2–5), and (2) Plaintiff has otherwise failed to establish its prima facie case entitling it to summary judgment, (*see id*. at 6–9).  The Court will address each argument to the extent necessary to resolve the instant Motion.

### 1.  Subject Matter Jurisdiction

Pursuant to 28 U.S.C. § 1359, "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made

or joined to invoke the jurisdiction of such court."  Where a defendant has presented sufficient evidence challenging a court's jurisdiction upon the basis of collusion, the plaintiff claiming diversity jurisdiction has the burden of proving it, which, in this instance, would require proving that the subject Mortgage Assignment is legitimate.  *See Gustavia Home, LLC v. 10586 Flatlands 1 Realty Corp.*, No. 17-CV-4188, 2019 WL 2056700, at *9 (E.D.N.Y. Mar. 31, 2019) (finding, where the defendant "presented sufficient evidence pursuant to [§] 1359 to raise a question as to the Court's subject matter jurisdiction" and the plaintiff failed to present any evidence that the challenged note assignment was not collusive, the plaintiff "failed to carry its burden of demonstrating that the Court has subject matter jurisdiction over th[e] case"); *see also Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) ("[T]he party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000))); *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 863 (2d Cir. 1995) ("[T]he burden falls on the party asserting diversity to demonstrate that the reason given for the assignment is legitimate, not pretextual.").  Indeed, the Second Circuit gives "careful scrutiny to assignments which might operate to manufacture diversity jurisdiction," because "such devices, unless controlled, can provide a simple means of expanding federal diversity jurisdiction far beyond [its] purpose." *Catskill Dev., L.L.C. v. Park Place Entern. Corp.*, 547 F.3d 115, 124 (2d Cir. 2008) (quoting *Airlines Reporting*, 58 F.3d at 862 (instructing that § 1359 is construed "broadly to bar any agreement whose 'primary aim' is to concoct federal diversity jurisdiction")); *see also AEP-PRI Inc. v. Galtronics Corp. Ltd.*, 576 F. App'x 55, 56 (2d Cir. 2014) (summary order) (same).

In determining whether an assignment is improper or collusive, "several factors may be relevant," including: "the assignee's lack of a previous connection with the claim assigned; the remittance by the assignee to the assignor of any recovery; whether the assignor actually controls the conduct of the litigation; the timing of the assignment; the lack of any meaningful consideration for the assignment; and the underlying purpose of the assignment." *Catskill Dev., L.L.C.*, 547 F.3d at 124 (quoting *Airlines Reporting*, 58 F.3d at 863). "No single factor is dispositive." *LCE Lux HoldCo S.a.r.l. v. Entretenimiento GM de Mexico S.A. de C.V.*, 287 F.R.D. 230, 239 (S.D.N.Y. 2012) (citing *Airlines Reporting*, 58 F.3d at 863). Finally, assignments between parent companies and their subsidiaries are considered "presumptively ineffective." *AEP-PRI Inc.*, 576 F. App'x at 56 (quoting *Airlines Reporting*, 58 F.3d at 862). "To overcome this presumption, the plaintiff-assignee must 'articulate a legitimate business purpose for the assignment.'" *Id.*

Here, Defendants argue that the assignment from Greystone to Fannie Mae was presumptively collusive, describing the assignment as Plaintiff's attempt to manufacture diversity jurisdiction by assigning the mortgage away from Greystone, which maintains its principal place of business in New York where Defendants are also located. (Defs' Mem. 3–4; *see also* Grunhut Decl. Ex. B, at 2 (Dkt. No. 37-3) (SEC records showing Greystone's business address as in New York, NY).) Specifically, Defendants cite a brochure prepared by Greystone, which Defendants argue shows that Greystone is "more than affiliated with Fannie Mae, but rather it is intertwined with Fannie Ma[e]." (Defs' Mem. 4–5.) (emphasis omitted). For several reasons, the Court disagrees.

First, Defendants have not established that they are entitled to a presumption that the transfers were collusive. At bottom, Defendants attempt to argue that Fannie Mae and Greystone

have a parent-subsidiary relationship by selectively quoting a Greystone brochure that describes

Greystone's participation in several multifamily loan programs, including with Fannie Mae.  (*See*

Defs' Mem. 4–5; Grunhut Decl. Ex. C ("Greystone Brochure") at 3–6 (Dkt. No. 37-4).)  While

Defendants are correct that the brochure discusses Greystone's connection to Fannie Mae, it also

describes Greystone's work with various other lending platforms, such as the Federal Housing

Administration ("FHA") through the Department of Housing and Urban Development ("HUD"),

and Freddie Mac.  (Greystone Brochure at 4.)  Defendants selectively seize on the brochure's

statements that Greystone is a "top ten lender for Fannie Mae." (Defs' Mem. 4–5.)[10]  However,

the brochure also says that Greystone is a "top 10 lender for Freddie Mac," that Greystone is the

"#1 FHA multifamily and healthcare lender," and generally discusses Greystone's "strong,

collaborative relationships with Fannie Mae, Freddie Mac[,] and [HUD]."  (Greystone Brochure

at 3–4.)  As such, this brochure does not substantiate Defendants' claim that Greystone is so

intertwined with Fannie Mae as to entitle Defendants to a presumption of collusion in this case.

Instead, this brochure solely establishes that Greystone is a self-reported leader in the

multifamily loan industry, an industry to which Fannie Mae is also a part of.

Moreover, at least one other Court in this District has examined whether Greystone and

another company, Freddie Mac, who worked together through multifamily mortgage programs,

effected presumptively collusive transfers.  *See Federal Home Loan Mortgage Co. v. Findlay*

*Estates, LLC*, No. 20-CV-8884, 2021 WL 323869, at *3–4 (S.D.N.Y. Feb. 1, 2021).  While this

case is not controlling upon this Court as suggested by Plaintiff, (*see* Pl's Reply 4), the Court

---

[10] Defendants incorrectly assert that the brochure states that Greystone is "top 3 in Fannie Mae small balance lending."  (Defs' Mem. 4–5.)  The brochure instead states that Greystone is "top 3 in Freddie Mac Small Balance lending."  (Greystone Brochure at 3.)  Freddie Mac is an entirely different company not at issue in this litigation.

does indeed find the case to be persuasive.  There, the court found that "Freddie . . . Mac and Greystone do not have a corporate relationship" because, "like other entities at arms-length from Freddie Mac, Greystone participated in a multifamily mortgage program offered by Freddie Mac." *Id*. at *3.  Similarly, Greystone appears to participate in a multifamily mortgage program offered by Fannie Mae, as well as several other multifamily mortgage programs offered by other entities.  As such, Defendants are not entitled to a presumption of collusiveness between Fannie Mae and Greystone.

Turning to the rest of the inquiry, which Defendants fail to address at all, (*see* Defs' Mem. 2–5), the remaining factors indicate that the assignment was not collusive.  For example, an assignment may be collusive if it follows close in time to, or occurs after, the commencement of a foreclosure proceeding.  *See Airlines Reporting*, 58 F.3d at 864 (finding timing "suspect" where the assignment was not made until after the defendant challenged the court's subject matter jurisdiction); *Gustavia Home, LLC*, 2019 WL 2056700, at *7 (finding that timing weighed in favor of collusion where a mortgage was assigned and the next day, the servicer sent default and preforeclosure notices); *Shamis v. Ambassador Factors Corp.*, No. 95-CV-9818, 1997 WL 473577, at *11 (S.D.N.Y. Aug. 18, 1997) ("Courts have held that the making of an assignment on or near the day a complaint is filed serves as an indication that the assignment was entered into for the purpose of manufacturing jurisdiction.").  Here, "Greystone originated the loan and then promptly sold it to [Fannie Mae]" on December 9, 2019.  *Findlay Estates*, 2021 WL 323869, at *4; *see also supra* Section I.A.2.  Moreover, the assignment from Greystone to Fannie Mae came approximately eight months prior to Fannie Mae's notification of events of default, and over two years prior to the commencement of this Action.

Similarly, and as argued by Plaintiff, (*see* Pl's Reply 4), the evidence in the record indicates that the assignment between Greystone and Fannie Mae was a standard, arms-length business transaction made between two entities in the regular course of the multifamily loan program.  Defendants do not argue, let alone demonstrate, that Fannie Mae did not pay meaningful consideration for the assignment of the mortgage, nor have Defendants argued that the assignment was not made "for a legitimate business purpose."  (*See generally* Defs' Mem.) *Cf. Mehmet v. Thompson*, No. 05-CV-7739, 2007 WL 2728742, at *3 (S.D.N.Y. Sept. 13, 2007) (finding collusion where the plaintiff did "not claim to have paid any consideration for the assignment"); *LCE Lux HoldCo S.a.r.l.*, 287 F.R.D. at 239 (finding that consideration did not support a finding of collusion because the assignee "suffered a detriment when it obtained rights [assigned to it by the assignor]"); *Boston Post Road Med. Imaging, P.C. v. Allstate Ins. Co.*, No. 03-CV-6150, 2004 WL 830154, at *3 (S.D.N.Y. Apr. 13, 2004) (finding no collusion where "the business purpose proffered by [the plaintiff] . . . [was] reasonable and [did] not appear to be pretextual").

Accordingly, Fannie Mae has demonstrated that the Court has subject matter jurisdiction over the instant foreclosure action, and Defendants' cross-motion for Summary Judgment is denied.

### 2.  Foreclosure Prima Facie Case

As for the merits of the foreclosure action, Plaintiff argues that it has established a prima facie case entitling it to foreclosure over the Mortgaged Property.  (*See* Pl's Mem. 2–4.)  A plaintiff mortgagee in a foreclosure action establishes a prima facie case "by presenting a note, a mortgage, and proof of default . . . ."  *E. Sav. Bank, FSB v. Evancie*, No. 13-CV-878, 2014 WL 1515643, at *4 (E.D.N.Y. Apr. 18, 2014); *see also U.S. Bank Nat'l Ass'n v. McDermott*, No. 20-CV-352, 2022 WL 2392522, at *5 (S.D.N.Y. July 1, 2022) (same); *Freedom Mortg. Corp. v.*

*Heirs*, No. 19-CV-1273, 2020 WL 3639989, at *4 (S.D.N.Y. July 6, 2020) (same).  This creates a "presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor." *Evancie*, 2014 WL 1515643, at *4.  "Under New York law, summary judgment in a mortgage foreclosure action is appropriate where the note and mortgage are produced to the Court along with proof that the mortgagor has failed to make payments due under the note." *U.S. Bank, N.A. v. Squadron VCD, LLC*, No. 10-CV-5484, 2011 WL 4582484, at *4 (S.D.N.Y. Oct. 3, 2011), *aff'd*, 504 F. App'x 30 (2d Cir. 2012) (summary order).

Here, Plaintiff has produced numerous loan documents, including the Amended Note, the GAP Mortgage, the CEMA, the Guaranty, and the various assignment documents.  *See supra* Section I.A.2.  Plaintiff has also offered two sworn declarations since at least August 2020 that demonstrate a failure to make timely and complete payments. (*See* Trent Decl ¶¶ 35–37; Shaddox Decl. ¶¶ 41–42.)  Plaintiff has also produced the Default Letter sent to Defendants on December 3, 2020.  (*See* Default Ltr.)  In Opposition, Defendants do not provide any evidence to the contrary or otherwise dispute their failure to make timely payments, although they also fail to admit to the same.  (*See generally* Defs' Mem.; Defs' Resp. 56.1.)  Instead, Defendants argue that Plaintiff fails to establish a prima facie case for default because Plaintiff has "fail[ed] to submit any documentation that could remotely substantiate [P]laintiff's claims" to "demonstrate any evidence of default," arguing that Plaintiff's affidavits are insufficient without additional books and records from Fannie Mae.  (Defs' Mem. 6–9.)  Defendants are wholly mistaken for several reasons.

First, contrary to Defendants' contentions, Plaintiff has indeed provided additional "books and records" substantiating the two declarations.  While not annexed specifically to the declarations, Plaintiff provided the Court with the Default Letter, which outlines in detail

Defendants' default.  (*See* Default Ltr. 3 (discussing a review of Greystone's records and outlining Defendants' missed payments for five months).)  Second, to the extent that Defendants question Plaintiff's "conclusory Declarations" based on the declarant's purported lack of knowledge, (*see* Defs' Mem. 7–8), the Court notes that the Default Letter names one of the declarants in this matter, Mr. Joel Shaddox as the contact for Defendants to discuss their account and any questions they may have regarding the default, (*see* Default Ltr. at 7).  It is clear that, both through the assertions in their declarations and Mr. Shaddox's involvement in the default process prior to filing the instant litigation, both declarants are qualified to review the payment history of the Mortgaged Property and attest to the payment history.  Third, courts regularly accept declarations and affidavits as evidence of default, especially in cases such as the instant Action where Defendants failed to make any showing to the contrary.  *See, e.g.*, *Avail 1 LLC v. Latief,* No. 17-CV-5841, 2020 WL 5633869, at *6–7 (E.D.N.Y. Aug. 14, 2020), *report and recommendation adopted*, 2020 WL 5633099 (E.D.N.Y. Sept. 21, 2020) (collecting cases and finding that the plaintiff had established a prima facie case and was therefore entitled to foreclosure where the plaintiff provided the court with the mortgage, note, and an affidavit evidencing the defendant's default, and the defendant failed to make a contrary showing).  Fourth and finally, Defendants cannot rest upon their blanket denials in their Answer and repeated references to such Answer to defeat summary judgment.  *See supra* note 2.  Here, while Defendants denied that this default occurred in their Answer, (*see, e.g.*, Answer ¶ 42), "they have not produced any evidence confirming that Defendant[s] . . . in fact made the required payment that was due on [August 1, 2020] or any of the required payments that followed, or that [they were] not required to make such payments."  *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 80 (E.D.N.Y. 2019).

18

"Plaintiff has therefore established a prima facie case and is presumptively entitled to foreclosure." *CIT Bank, N.A. v. Portfolio Recovery Assocs.*, LLC, No. 15-CV-8618, 2017 WL 2819867, at *3 (S.D.N.Y. June 28, 2017); *see also Avail 1 LLC v. Latief*, 2020 WL 5633869, at *6–7; *Hoyer,* 362 F. Supp. 3d at 80; *Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 415 (E.D.N.Y. 2018) (holding that the plaintiff proved default where it presented an affidavit from its single member that included a statement "based on his own knowledge and from reviewing Plaintiff's business records kept in the ordinary course of Plaintiff's business that defendant failed to cure the default" (quotation and brackets omitted)).  Next, "the burden shifts" to Defendants to establish any affirmative defenses.  *E. Sav., FSB v. Thompson*, No. 12-CV-1197, 2016 WL 2977268, at *2 (E.D.N.Y. May 19, 2016); *see also Freedom Mortg. Corp.*, 2020 WL 3639989, at *4 (same).

### 3.  Affirmative Defenses

In their Answer, Defendants asserted 31 affirmative defenses and a counterclaim against Plaintiff in the instant Action.  (*See* Answer ¶¶ 93–128.)  In Opposition to Plaintiff's Motion, Defendants do not reiterate any of these asserted defenses, nor respond to any of Plaintiff's arguments in its briefing as to why these affirmative defenses are inapplicable.  (*Compare* Pl's Mem. 8–23, *with* Defs' Mem.)  Because Defendants have "produced no evidence in support of" any of their affirmative defenses, "[s]uch unsubstantiated statements are insufficient to establish a dispute of material fact."  *Freedom Mortg. Corp*, 2020 WL 3639989, at *4; *see also Bank of Am., N.A. v. Vanderbilt Trading USA LLC*, No. 17-CV-7167, 2019 WL 8807747, at *5 (E.D.N.Y. Sept. 9, 2019) (explaining that where a defendant fails to respond to a 56.1 Statement, a court may consider a defendant's verified answer as it would an opposition to a 56.1 Statement, but that all assertions, "including its affirmative defenses, must be supported by specific facts to raise a genuine dispute" and "[c]onclusory assertions will not be considered"); *Signature Fin.*

*LLC v. Neighbors Glob. Holdings, LLC*, No. 17-CV-6089, 2018 WL 2138624, at *5 (S.D.N.Y. May 9, 2018) (requiring that a verified answer contain "specific factual allegations" to resist a motion for summary judgment).  In addition, the Court is persuaded by Plaintiff's thorough response to each of the 31 affirmative defenses as outlined in their Motion.  (*See* Pl's Mem. 8–23.)  The Court declines to discuss each in detail here, as Defendants did not make any effort to support their claims.

Accordingly, Defendants have failed to meet their burden with respect to their affirmative defenses, and Plaintiff is entitled to summary judgment.  Moreover, because Defendants' counterclaim is wholly based in its affirmative defenses—which Defendants have effectively abandoned while litigating this Motion—the Court also dismisses Defendants counterclaim.  (*See* Answer ¶¶ 124–28 (bringing a counterclaim based on the assertion that "[P]laintiff did not then, and does not now, have the right to maintain a foreclosure action against Defendants").)  *See also OneWest Bank, N.A. v. Melina*, No. 14-CV-5290, 2015 WL 5098635, at *5-6 (E.D.N.Y. Aug. 31, 2015) ("Because [the plaintiff-mortgagee's] motion for summary judgment is granted, [the defendant-mortgagor] has not successfully defended this action. Accordingly, [its] counterclaim for attorney's fees is dismissed."), *aff'd*, 827 F.3d 214 (2d Cir. 2016).

### 4.  Relief

Finally, Plaintiff seeks $2,423,493.10 in damages, consisting of the principal balance of $1,785,908.30, $207,678.81 in interest from July 1, 2020, through January 31, 2023, interest at the default rate in the amount of $181,368.91 from August 1, 2020, through January 31, 2023, $50,737.89 in protective advances as well as $4,674.42 in interest on those advances, $4,070.52 in late charges, $89,295.41 in yield maintenance, $14,898.68 in various fees and negative escrow, as well as $84,860.16 in attorneys' fees and costs.  (Pl's Mem. 23–24; Trent Decl ¶ 38.)  Plaintiff also seeks several ongoing expenses such as per diem interest, as well as unspecified

"[a]dditional sums [that] may be come due and owing to Plaintiff" such as "environmental costs, insurance, real estate taxes, protective advances for the preservation and benefit of the Mortgaged Property and other assessments or liens due and owing at the Mortgaged Property." (Trent Decl. ¶ 40.)

As to the request for attorneys' fees, attorneys' fees in mortgage foreclosure actions may only be recovered if they are contractually authorized, as there is "no statute in New York authorizing the recovery of an attorney's fee" in such cases. *See Vigo v. 501 Second St. Holding Corp.*, 994 N.Y.S.2d 354, 356 (App. Div. 2014). The Gap Mortgage entitles Plaintiff to recover reasonable attorneys' fees from Quickway in the event of a default or actions taken to enforce the loan documents. (Pl's 56.1 ¶ 42; Gap Mortgage at 15–16.) As such, Plaintiff is entitled to reasonable attorneys' fees.

"Pursuant to [§] 1321 of [] [New York's Real Property Actions and Proceedings Law ("RAPL")], the trial court has the authority to compute the amount owed or appoint a referee to do the same." *U.S. Bank Tr., N.A. v. Dingman*, No. 16-CV-1384, 2016 WL 6902480, at *4 (S.D.N.Y. Nov. 22, 2016) (appointing a referee to calculate damages and sell the property after awarding summary judgment to plaintiff in a foreclosure action); *see also CIT Bank, N.A. v. Langley*, No. 17-CV-1548, 2019 WL 6050258, at *6 (E.D.N.Y. Nov. 15, 2019) ("[U]pon awarding summary judgment to a plaintiff in a foreclosure action, the RAPL allows for the appointment of a referee."); *CIT Bank, N.A. v. Metcalfe*, No. 15-CV-1829, 2017 WL 3841852, at *1–2 (E.D.N.Y. Sept. 1, 2017) (appointing a Special Master to calculate "the outstanding principal, accrued late charges, related expenses and attorneys' fees" with respect to a mortgage foreclosure). Plaintiff is therefore directed to file a Proposed Judgment of foreclosure providing for a sale of the Property and requesting the appointment of a proposed referee to calculate the

total amount owed to Plaintiff, effectuate the sale, and disperse funds from such a sale.  *See CIT Bank, N.A. v. Escobar*, No. 16-CV-3722, 2017 WL 3614456, at \*9 (E.D.N.Y. June 16, 2017), *report and recommendation adopted*, 2017 WL 3634604 (E.D.N.Y. Aug. 18, 2017).

     C.  Motion for Default Judgment

This Court's Individual Rules of Practice state that "a Party who wishes to obtain a default judgment must proceed by way of an Order To Show Cause."  Individual Rules of Practice of the Honorable Kenneth M. Karas, IV.  Plaintiff did not move for a default judgment by way of an Order to Show Cause.  (*See* Dkt.)  Thus, Plaintiff's Motion for Default Judgment is denied without prejudice for failure to follow this Court's Individual Rules of Practice.  Plaintiff may re-file its Motion for Default Judgment so that it complies with this Court's Individual Rules of Practice.

### III.  Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted, Plaintiff's Motion for Default Judgment is denied without prejudice, and Defendants' Motion for Summary Judgment is denied.  Defendants' counterclaim is also dismissed.  Plaintiff may file a renewed motion for default judgment in accordance with this Court's Individual Rules of Practice.

The Clerk of Court is directed to terminate the pending motions at Dkt. Nos. 36 and 37. Upon certification by Plaintiff, the Clerk of the Court is also respectfully requested to terminate the following Defendants:  John and Jane Does 1-10, ABC LLC 1-10, and XYZ Corp. 1-10. SO ORDERED.

Dated:    September 21, 2023
           White Plains, New York

_____
KENNETH M. KARAS
United States District Judge